IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PEDRO CABRERA GONZALEZ,<br><br>Defendant. | CRIMINAL NO. 05-366 (JAG) |

## **REPORT AND RECOMMENDATION**

### **INTRODUCTION**

Defendant Pedro Carrera González ("Carrera González") filed a Motion to Dismiss Based on Collateral Estoppel (Docket No. 37) which was referred on May 26, 2006 to this Magistrate Judge for report and recommendation (Docket No. 38). On June 2, 2006, the government subsequently filed a response. (Docket No. 44).

### **BACKGROUND**

Defendant Carrera González is herein charged with violation to 18 U.S.C. §2119, a carjacking offense, the use and/or possession of a firearm in relation to a crime of violence under 18 U.S.C. §924(c) and being a felon in possession of a firearm, 18 U.S.C. §922(g)(1).

Carrera González submits that he was previously charged and acquitted by the Superior Court of San Juan, Commonwealth of Puerto Rico, for the same offenses, to wit; violations of articles 94 (assault) and 173 (robbery), in addition to weapons' law violations. As such, defendant submits the federal Indictment of this case should be subject of dismissal on grounds of collateral estoppel because he was already tried and acquitted at the state level for the same course of conduct presented in this federal Indictment. Defendant contends that, under the

theory of collateral estoppel, the critical factual issue tried before the state courts, to wit, that he participated in the alleged robbery and possessed the alleged weapon, was already adjudicated and acquitted and, thus, defendant should not be re-tried by the federal court. Defendant submits in support of his collateral estoppel doctrine, that the Commonwealth of Puerto Rico should not be viewed as a separate sovereign because, under its present political status, Puerto Rico and the United States are the same party.

## LEGAL DISCUSSION

**A. Blockburger and Different Elements of the Offense Test**.

First, under the more stringent analysis of double jeopardy, defendant Carrera-Gonzalez' arguments in favor of dismissal on grounds of collateral estoppel lack merit since, in the absence of the sovereignty issues also discussed below, successive prosecutions even by the same sovereign do not violate double jeopardy principles if the second prosecution involved substantively different offenses.

Thus, under <u>Blockburger v. United States</u>, 284 U.S. 299, 304, 52 S.Ct. 180, 182 (1932), re-adopted in <u>United States v. Dixon</u>, 509 U.S. 688, 113 S.Ct. 2849 (1993), offenses are "different" for this purpose so long as "each [offense] requires proof of an additional fact which the other does not."

Defendant in the instant case was charged and subsequently acquitted in the state court for the Commonwealth of Puerto Rico, in accordance with his own submissions and copy of

United States v. Pedro Cabrera González
Criminal No. 05-366 (JAG)
Report and Recommendation
Page No. 3

the judgment of acquittal filed with the Motion to Dismiss, of robbery, assault and weapons' law violations.[1]

The Puerto Rico Penal Code defines robbery in Art. 173 as an offense committed when "every person who unlawfully appropriates the personal property belonging to another, whether taking it from the person or from the person having possession thereof, in his immediate presence and against his will, by means of violence or intimidation, shall be punished ... (33 L.P.R.A. § 4279).

The Puerto Rico Penal Code defines assault in Art. 94 as "[a]ny person who uses force or violence upon the person of another with the intent to injure him ... (33 L.P.R.A §4031). Defendant was also charged in state court for violations Art 5.04 of the Puerto Rico Weapons' Law.

In the instant federal offense, defendant is now being charged in Count One with carjacking under federal statute as provided by Title 18, United States Code, Section 2119.[2]

---

[1] Defendant does not argue that he was charged at state level under the carjacking of 33 L.P.R.A. §4279(b) (Sec. 173(b)) that provides a violation by "Any person who, using an object capable of causing grave bodily injury, unlawfully appropriates him or herself of a motor vehicle belonging to another, taking it away from the person, or from the person in whose possession it is at the time, in his or her immediate presence and against his/her will, through the use of violence or intimidation ...". Such state charge would still not have any bearing on this report and recommendation since the interstate commerce link required at federal level is absent from the state carjacking penal provisions.

[2] The jurisdictional element of 18 U.S.C. § 2119 requires that the government proves that the car in question has been moved in interstate commerce, at some time. See United States v. Johnson, 22 F.3d 106, 108-09 (6th Cir. 1994); United States v. Otero-Méndez, 273 F.3d 46, 51 (1st Cir. 2001). See also United States v. Rivera-Figueroa, 149 F.3d 1, 3 (1st Cir. 1998) (the statute contains an element designed to establish federal power, namely, that the vehicle must have been transported, shipped, or received in interstate or foreign commerce, which is a specific element that must be charged and proved to make the carjacking a crime)

<u>United States v. Pedro Cabrera González</u>
Criminal No. 05-366 (JAG)
Report and Recommendation
Page No. 4

The statute provides that "[w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation or attempts to do so ..." (18 U.S.C. §2119).

A violation under 18 U.S.C. §924(c), as the one in Count Two, charges defendant Carrera González with knowingly use and carry a firearm, as the term is defined in Title 18, <u>United States Code</u>, Section 921(a)(3), that is, one pistol of unknown brand and caliber, during and in relation to a crime of violence.

Count Three charges defendant for, being a person who was convicted in Court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in or affecting commerce and receive a firearm (18 U.S.C. § 922(g)(1)).

Evidently, the offenses above indicated are different under the <u>Blockburger</u> rationale to the state offenses since all possess different elements.  For example, in a state prosecution, an essential element of the federal carjacking statute -interstate commerce- need not be established by the courts of the Commonwealth of Puerto Rico.  Furthermore, the federal carjacking statute has a specific intent requirement to cause death or serious bodily injury. <u>United States v. Delgado-Hernández</u>, 420 F.3d 16, 26 (1st Cir. 2005).  Thus, even if defendant had been charged under the state carjacking statute, to now convict him under federal carjacking statute, the government must prove that the defendant intended to cause death or

serious bodily injury. Title 18, United States Code, Section § 2119; United States v. Otero-Méndez, 273 F.3d 46 (1st Cir. 2001).

As to the Section 924(c), the use and or possession of a firearm during the commission of a crime of violence is a required element, as is also being a convicted felon in possession of a firearm, which require interstate or foreign commerce. United States v. Bouthot, 685 F.Supp. 286, 293 (D. Ma. 1988) (state charges of carrying a firearm without a license and the federal charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(h)(1) are separate statutory offenses and to prevail on the federal charges the government must establish not only possession of a firearm, but also each defendant's status as a convicted felon and that the gun in question traveled in interstate commerce).

Accordingly, under Blockburger, since the federal offenses herein charged and the Puerto Rico offenses as to which defendant was acquitted have different elements, thus, there are no collateral estoppel issues present. United States v. Perez-Perez, 72 F.3d 224, 226 (1st Cir. 1995).

**B. Different Sovereigns**.

Defendant Carrera González also submits the Puerto Rico political status as a Commonwealth should be examined for purposes of granting state courts, as the first prosecuting entity, ultimate factual decision making authority on issue of defendant's criminal conduct and/or resulting acquittal. To substantiate the requirement that for collateral estoppel to apply the identities of the concerned parties should be the same, defendant succinctly submits

Puerto Rico should not be considered a sovereign contrary to other states of the United States of America, more so in light of the President's Task Force on Puerto Rico Status of December of 2005, concluding that Puerto Rico is but a territory of the United States, upon which Congress has plenary power to legislate. As such, defendant submits the Commonwealth of Puerto Rico and the United States are the same party and, thus, subject to the collateral estoppel doctrine.

Notwithstanding the difficulties and political conundrum raised when Puerto Rico's political status is object of discussion, the instant case is but a legal one that firmly rests on doctrines well grounded by the Court of Appeals for the First Circuit which has consistently applied statutes advancing federal interests to Puerto Rico even when Congress has been silent on the matter. *See, e.g.*, Examining Bd., 426 U.S. 572, 590, 96 S.Ct. 2264 (1976); TAG/ICIB Servs., Inc. v. Pan Am. Grain Co., 215 F.3d 172, 178 (1st Cir. 2000); United States v. López Andino, 831 F.2d 1164, 1167 (1st Cir. 1987) (statutory prohibition on conspiracies to deprive citizens of civil rights applies to Puerto Rico); United States v. Tursi, 655 F.2d 26, 27 (1st Cir. 1981) (assuming that Youth Corrections Act applies to Puerto Rico); NLRB v. Sec. Nat'l Life Ins. Co., 494 F.2d 336, 337-338 (1st Cir. 1974) (National Labor Relations Act applies to Puerto Rico). *See* United States v. Acosta-Martínez, 252 F.3d 13, 20 n. 6 (1st Cir. 2001).[3]

---

[3] The Court of Appeals for the First Circuit has also consistently enforced a variety of federal statutes which Congress intended to apply to Puerto Rico. *See, e.g.*, Dávila-Pérez v. Lockheed Martin Corp., 202 F.3d 464, 468 & n. 4 (1st Cir. 2000) (Defense Base Act applies to Puerto Rico); United States v. Rivera Torres, 826 F.2d 151, 155 (1st Cir. 1987) (Clean Water Act applies to Puerto Rico); Caribtow Corp. v. Occupational Safety & Health Review Comm., 493 F.2d 1064, 1065-66 & 1067-68 (1st Cir. 1974) (Occupational Safety and Health Act applies to Puerto Rico); Moreno Rios v. United States, 256 F.2d 68, 71-72 (1st Cir. 1958) (Narcotic Drugs Import and Export Act applies to Puerto Rico).

United States v. Pedro Cabrera González
Criminal No. 05-366 (JAG)
Report and Recommendation
Page No. 7

The Presidential Task Force Report adduced by defendant and included as an exhibit to his Motion to Dismiss is a proposal and recommendation to the President, an aspirational document as referred to in Iguartua de la Rosa,[4] which does dispose, without more and at this juncture, of a long-standing congressionally approved legislation and the historic background between the United States of America and the people of Puerto Rico. Such background significantly changed when as of July 3, 1950, Congress, "fully recognizing the principle of government by consent," adopted Public Law. No. 600, "in the nature of a compact," to empower the people of Puerto Rico "to organize a government pursuant to a constitution of their own adoption." 64 Stat. 319, 319 (1950), 48 U.S.C. § 731b (hereinafter "Public Law 600"). In accordance with Public Law 600, which terms were submitted to, and accepted by, the people of Puerto Rico in a referendum held on June 4, 1951, a constitutional convention was called by the Legislature of Puerto Rico for the drafting of the Constitution of the Commonwealth of Puerto Rico. This constitution was finally adopted by the people of Puerto Rico by a referendum on March 3, 1952, and subsequently transmitted, via the President, to Congress for approval. The constitution was approved by Congress on July 3, 1952, "as a compact with the people of Puerto Rico." *See* Public Law No. 447, 66 Stat. 327, 327 (1952). With the acceptance of Congress's conditions, the constitution was ultimately approved by the

---

[4] "FN2. The first two of the three documents are not "treaties" in the constitutional sense, being instead aspirational documents never submitted by the President for Senate ratification. U.S. Const. art. II, § 2, cl. 2. Neither is listed in the State Department's current "treaties in force" list. U.S. Department of State, Treaties in Force 2004, at www.state.gov/s/l/38294.htm. For convenience, we ignore the distinction because it does not affect the result in this case." Igartua-De La Rosa v. U.S., 417 F.3d 145, 148 (1st Cir. 2005).

United States v. Pedro Cabrera González
Criminal No. 05-366 (JAG)
Report and Recommendation
Page No. 8

people of Puerto Rico, "the compact became effective, and Puerto Rico assumed Commonwealth status." Examining Bd. of Eng'rs v. Flores de Otero, 426 U.S. 572, 593-94, 96 S.Ct. 2264 (1976). *See* Orta Rivera v. Congress of U.S. of America, 338 F.Supp.2d 272, 279 (D. Puerto Rico 2004).

Under the above factual grounds, defendant Carrera Gonzalez' arguments based on a report to the President by a designated task force on Puerto Rico's status as the basis for determining same identity of the Commonwealth of Puerto Rico and the United States for collateral estoppel versus properly historic and legislative components do not pass muster[5] in light of numerous consonant decisions of the Court of Appeals for the First Circuit upon which these two are considered sovereigns for criminal law and double jeopardy purposes. *See* Heath v. Alabama, 474 U.S. 82, 106 S.Ct. 433 (1985) (successive prosecutions by two states for same conduct were not barred by double jeopardy clause since when a defendant in a single act violates peace and dignity of two separate sovereigns by breaking laws of each, he has committed two distinct offenses for double jeopardy purposes); Bartkus v. Illinois, 359 U.S. 121, 123-24, 79 S.Ct. 676, 678 (1959) (successive prosecutions would be barred if the state "was merely a tool of the federal authorities, who thereby avoided the prohibition of the Fifth Amendment against a retrial of a federal prosecution after an acquittal" and the second

---

[5] Changes to the Constitution and the present status of Puerto Rico are not the province of federal judges, nor are they dictated by international law; those changes can only be adopted as set forth in the Constitution and laws of the United States. *See* Igartua-De La Rosa, 417 F.3d at 152; *see also* Keenan D. Kmiec, *The Origin and Current Meanings of "Judicial Activism", Comment,* 92 Cal. L.Rev. 1441, 1463-76 (2004) (describing judicial practices purported to be indicative of judicial activism). .

United States v. Pedro Cabrera González
Criminal No. 05-366 (JAG)
Report and Recommendation
Page No. 9

prosecution was thus "a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution); United States v. Pérez-Pérez, 72 F.3d 224 (1st Cir. 1995) (double jeopardy nor collateral estoppel barred defendant's federal convictions which occurred after he was acquitted on Puerto Rico charges of attempted murder and concealing evidence); United States v. López Andino, 831 F.2d 1164 (1st Cir. 1987)(criminal civil rights statutes applicable to Puerto Rico since United States and Puerto Rico were dual sovereigns for double jeopardy purposes despite Puerto Rico's constitutional status as a territory).

López Andino further recognized that Puerto Rico has been given such complete control over its local criminal affairs that it may freely prosecute criminal behavior under its own laws regardless of whether the federal government prosecutes the same behavior under federal law.

In the present case, the collateral estoppel issue would not prosper since like in López Andino the federal government was not a party to the state case as to defendant Carrera González. The requirements of the collateral estoppel doctrine include that the party to be precluded from re-litigating an issue decided in a previous litigation was either a party or in privity with a party to that prior litigation and defendant has failed to establish this requisite.[6]

---

[6] A party to the action must have been "so closely related to the interest of the party to be fairly considered to have had his day in court." In re Gottheiner, 703 F.2d 1136 (9th Cir.1983). There must be a "substantial identity" of the parties such that the party to the action was the virtual representative of the party estopped. Chicago, R.I. & P. Ry. Co., 270 U.S. 611, 621, 46 S.Ct. 420, 424 (1926); Pan American Match Inc. v. Sears, Roebuck and Co., 454 F.2d 871 (1st Cir.1972). See United States v. Bonilla Romero, 836 F.2d 39, 43 (1st Cir. 1988).

United States v. Pedro Cabrera González
Criminal No. 05-366 (JAG)
Report and Recommendation
Page No. 10

# CONCLUSION

In light of the above discussed, it is recommended that defendant Carrera González' Motion to Dismiss for Collateral Estoppel BE DENIED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 8th day of June of 2006.

                                                     S/CAMILLE L. VELEZ-RIVE
                                                     CAMILLE L. VELEZ-RIVE
                                                     UNITED STATES MAGISTRATE JUDGE