IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

PEDRO CARRERA GONZALEZ,

Defendant.

CRIMINAL NO. 05-366 (JAG)

## REPORT AND RECOMMENDATION

## INTRODUCTION

Defendant Pedro Carrera González filed a Motion to Suppress and Request for Hearing Under Rule 12 (D) seeking to suppress the government's announced evidence to introduce electronic equipment allegedly seized from Carrera Gonzalez' home, driver's license and a voter's registration card of the victim of the carjacking offense, Attorney Armando Porrata Doria. In addition, defendant seeks to suppress some statements he made to Puerto Rico Police Officer Luis D. Cruz Serrano ("PRPO Cruz Serrano") (**Docket No. 42**).

The Government filed its Reply to Motion to Suppress Physical Evidence arguing the two pieces of electronic equipment, a PlayStation and a DVD player, were obtained from defendant's home in plain view, when the agents were allowed inside the house by the defendant's common-law-wife, Xiomara Antongiorgi, and the two identification documents (the driver's license and voter's registration card of the victim Attorney Porrata Doria) which were found lying on the floor in the yard of defendant's house where the trash bags had also been placed. (**Docket No. 45**).

United States of America v. Pedro Carrera González
Criminal No. 05-366 (JAG)
Report and Recommendation
Page 2

The Motion to Suppress was referred by the Court to the undersigned Magistrate Judge for hearing and report and recommendation.  (**Docket No. 43**).

The evidentiary hearing was initially held on June 22, 2006 and further suppression hearings were entertained on July 17, August 3 and 22 and on September 1, 2006,  wherein the testimonies of Puerto Rico Police Officers ("PRPOs") Luis D. Cruz Serrano  ("PRPO Cruz Serrano"), Daniel Alvarez Santana  ("PRPO Alvarez Santana"), Vicente Class Corchado ("PRPO Class Corchado"), FBI Agent Eric Gonima Gil ("FBI Agent Gonima Gil"), Attorney Porrata Doria, and defendant Carrera González were presented.  The transcripts for the suppression hearing were requested and filed on October 4, 2006.  As such, the matter was deemed submitted for resolution on October 4, 2006.  **(Docket Nos. 72, 73, 74, 75, and 76**).

## FACTUAL BACKGROUND

### I.     Testimony of Attorney Porrata Doria.

The government initiated the hearing with the testimony of Attorney Porrata Doria, the carjacking victim of the offense for which defendant Carrera González is now being charged. Attorney Porrata Doria testified as to the events which transpired on the evening hours of March 16, 2005.  Attorney Porrata Doria was sitting inside his vehicle and looking for some documents and papers located on the back seat of his vehicle he had just parked in the area of Miramar before going to his apartment.  An individual, later identified as defendant, opened the right side door of the vehicle, the passenger's seat.  The individual sat inside the car with a pistol in

United States of America v. Pedro Carrera González
Criminal No. 05-366 (JAG)
Report and Recommendation
Page 3

his hand while directing the firearm at Attorney Porrata Doria's cheek,  asking to give him everything he had.  The victim turned over twenty dollars and his wallet which contained several documents, including his driver's license, voter's registration card and credit cards. The individual also took the victim's cellular phone which was in the front seat, the keys to the car and to his apartment.

Attorney Porrata Doria testified some time thereafter, around March 17, 2005, he did not authorize anyone to use his stolen credit cars nor did he purchase or authorize the purchase made with one of his stolen credit cars at the Video Avenue store in the town of Bayamón, Puerto Rico.  Attorney Porrata Doria met with Puerto Rico Police Officers ("PRPOs") later for an initial complaint of the events and two agents went to his apartment that night for an interview.   The individual was further described to the Puerto Rico Police as a dark skin male, more or less about the same size as the victim, five eleven to five ten inches tall, who was heavy built.   Attorney Porrata Doria clarified defendant Carrera González was at the time the suppression hearing some thirty to forty (30-40) pounds lighter than at the time of the offense. Additionally, the date of the carjacking defendant Carrera González was using a jacket, held a visor cap, and Attorney Porrata Doria noticed he had large nostrils. Attorney Porrata Doria was able to see him clearly, since the light of the car was turned on when the unlocked door was opened.  Thus, Attorney Porrata Doria was able to identify defendant Carrera González later in a line-up.  Attorney Porrata Doria also identified defendant in open court as the individual who robbed and carried out the carjacking on March 16, 2005.

United States of America v. Pedro Carrera González
Criminal No. 05-366 (JAG)
Report and Recommendation
Page 4

## II.   Testimony of  PRPO Cruz Serrano.

### A.  Direct examination

PRPO Cruz Serrano has worked for the PRPD for ten (10) years and at the CIC Robbery Division in San Juan for a year and a half.  During the investigation of the carjacking and robbery events of Attorney Porrata Doria, PRPO Cruz Serrano visited a business known as Video Avenue in Bayamón to corroborate information about a purchase made with the stolen credit card of the victim.  Upon interviewing the manager and being provided with a CD of the videos of all purchases made that day, as well as two (2) purchase receipts, he went to the PR Police Headquarters to analyze the video and identify the person with the characteristics informed by Attorney Porrata Doria.

PRPO Cruz Serrano identified the receipts of purchases made with a credit card of Attorney Porrata Doria on March 17, 2005, as the purchase events which were depicted in a video recording that day at Video Avenue store in Bayamón.  **Exhibit 1.**  The video played during the hearing depicted three persons and PRPO Cruz Serrano identified defendant Carrera González as the individual with a white shirt with a black shirt coming out of his sleeves and with a cap which appeared in the video.  **Exhibits 3 A and 3 B.**

With the still pictures processed from the video, PRPO Cruz Serrano went to the address he obtained of the assistant manager of the Video Avenue store, Ms. Gloraima Torres, at the Fifth Section of Levittown Development, Dr. Abelardo Street in Cataño.  She identified the individual who made the purchases that night at the Video Avenue store as the person residing

United States of America v. Pedro Carrera González
Criminal No. 05-366 (JAG)
Report and Recommendation
Page 5

next door to her, known as Junito, later identified as defendant Carrera González. PRPO Cruz

Serrano then proceeded to go to the house next door where he was greeted by Junito's wife,

Ms. Xiomara Antongiorgi, asking where Junito was. She told the PRPOs that Junito was inside

sleeping and asked them to go inside, entering the residence through the area of the carport and

into the kitchen. Ms. Antongiorgi, who was identified by PRPO Cruz Serrano as being present

in court at the suppression hearing, went into the bedroom to get Junito. When Junito came

out, he was showed the photos from the Video Avenue store and decided to remain silent.

While still in the open area from the kitchen, PRPO Cruz Serrano saw in plain sight there were

some empty boxes and a PlayStation on the floor where the television was, as if they had been

using it. When Ms. Antongiorgi, was asked as to these boxes from the purchases they had

made, she showed them the boxes and then proceeded to hand PRPO Cruz Serrano the DVD

player from the bedroom. Defendant Carrera González was then read his rights and handcuffed

while they exited the residence. They got out of the house from the living room and out to the

front courtyard, which was a cement and lawn area towards the open space outside the front

of the house. There is a gate outside towards the front of the street and while leaving, PRPO

Cruz Serrano noticed on the ground and next to two small garbage bags like the ones used for

shopping, two identification cards that matched the ones of the victim, Attorney Porrata Doria.

 These cards would have been visible to anyone who would look over the fence from the

outside, since the fence was about 40-42 inches high. These cards were then seized and are

also object of defendant's request for suppression of physical evidence. **Exhibit 2.**

United States of America v. Pedro Carrera González
Criminal No. 05-366 (JAG)
Report and Recommendation
Page 6

After the district attorney allowed the prosecution of the case at state level, an identification line-up was carried out where Attorney Porrata Doria identified defendant Carrera González as the individual who had robbed him.  The matter was then submitted to a local magistrate.

PRPO Cruz Serrano further testified that, after the Rule 6 state hearing was held and the defendant was on his way out of the Police General Headquarters for booking, Carrera González made a statement admitting he had carried out the robbery because the victim was an easy prey and took advantage of the opportunity before him at the time.  However, Carrera González denied having used a firearm at the time.   Defendant Carrera González had been provided with an admonishment of his rights at his residence and once again at the Police Headquarters when he was told a line-up was going to be conducted.  Defendant was asked to sign, at both instances, the warning and waiver of rights forms.  **(Exhibits 4-5).**

During direct examination of PRPO Cruz Serrano the following evidence was introduced:

**Exhibit 1**:  the receipts from Video Avenue store in Bayamón of purchases made with Attorney Porrata Doria's credit card; one of March 17, 2005 at eight o'clock at night and the other for same date at six twenty in the afternoon, for the amounts of $364.95 and $99.90, corresponding to a PlayStation and a DVD player.

**Exhibit 2:** Photocopies of identification cards found on the ground upon exiting Carrera González' residence which belonged to the victim Attorney Porrata Doria, to wit; driver's license and voter's identification card.

**Exhibit 3 A and 3 B**: CD-ROM of the video recording depicting purchases made at Video Avenue store of Bayamón on March 17, 2005.

**Exhibit 4:** document stating the admonishment and warning of rights provided on March 30, 2005, to Carrera González, signed by him and two PRPOs agents, including PRPO Cruz Serrano and Agent Luis Muñiz Rodríguez prior to conducting the line-up at the Police Headquarters.

**Exhibit 5:** document stating the admonishment and warning of rights provided to Carrera González at his residence dated March 30, 2005, at the time he was arrested, signed by PRPO Cruz Serrano.

**Joint Exhibit 1:** FBI Agent Richard Gilbert's 302's report dated October 20, 2005, when defendant was taken into FBI custody.

**B.  Cross-examination of PRPO Cruz Serrano.**

For cross-examination, defense counsel for Carrera González, Attorney Juan Matos de Juan, obtained the log book or notes of PRPO Cruz Serrano at the CIC, the 302's report of FBI Agent Eric Gonima and the waiver of rights the FBI presented to defendant Carrera González on October 20, 20005, which he declined to sign but placed his initials.  The 302's report of Agent Gilbert, the FBI agent who initially investigated the case which was transferred to Agent

United States of America v. Pedro Carrera González
Criminal No. 05-366 (JAG)
Report and Recommendation
Page 8

Gonima, was presented as **Joint Exhibit 1**.  A continuance of the suppression hearing was granted to allow defense counsel to examine the recently produced evidence.

During cross-examination, one video clip segment was shown to PRPO Cruz Serrano which depicted a purchase made at the Video Avenue store in Bayamón by the assistant to the manager, Ms. Gloraima Torres, with an individual who happened to be Mrs. Torres' husband, while conducting a credit card transaction and being provided with a receipt around 6:29 p.m. Counsel for defendant addressed this situation as one similar to Exhibit 1 regarding the receipts initially introduced by the government.  **(Exhibit B)**.  Exhibit 1, however, contains two sales receipts; one showing the hour of the transaction with Atty. Porrata Doria's credit card as 6:20 p.m. (18:20). The video clipping presented during cross-examination was a segment of the same and one continuous video recording of the transactions conducted that date and time at Video store in Bayamón (Segment 20050317341001).[1]

Additionally, PRPO Cruz Serrano prepared and signed a sketch drawing of Carrera González' home upon request of defense counsel showing where and how the agents entered the house with Ms. Antongiorgi, defendant's wife and how they left with defendant Carrera González under arrest.  The marking on the sketch drawing named "trash" ("basura") shows the place were the garbage bags were outside the house and next to them were found the driver's license and voter's identification cards of the victim, Attorney Porrata Doria.

---

[1] PRPO Cruz Serrano also testified they detained and/or invited over to the Police Station Ms. Gloraima Torres and her husband the same date of the arrest of defendant Carrera González since there were two components under investigation for the offenses committed at state level, the fraud with the credit cards and the robbery and carjacking of Attorney Porrata Doria.

United States of America v. Pedro Carrera González
Criminal No. 05-366 (JAG)
Report and Recommendation
Page 9

The report signed and prepared on March 31, 2005, being the first report for this type of offense ever prepared by PRPO Cruz Serrano, does not depict the property seized or recovered during the arrest nor defendant Carrera González' alleged statement admitting to the commission of the robbery. **Exhibit D**.  The evidence seized from defendant Carrera González' home was deposited in the evidence room of the PR Police Headquarters until it was delivered, in the presence of PRPO Cruz Serrano to FBI Agent Gonima, to wit; Sony CD/DVD player with remote control, PlayStation2 with control and memory card and cables, Shark Tale movie with Video Avenue case, The Passion of the Christ movie with Video Avenue case, Freeze Frame movie with Video Avenue case, one gray and black Nokia cellular phone, one gold color porn movie with P.R. letters.  **Exhibit F.**

On re-direct examination the government introduced through the testimony of PRPO Cruz Serrano a document making reference on the flip side to defendant Carrera González stating voluntarily and without intimidation having committed the deeds of March 17, 2005. (**Exhibit 6**; memo to file).

Defendant Carrera González presented, through the above testimony of PRPO Cruz Serrano, the following evidence:

**Exhibit A**: Incident Report of the PR Police dated March 16, 2005, signed by the victim Attorney Porrata Doria and prepared by Sgt. Anibal Pabón Rivera, which serves as state complaint ("querella") for the offense.

**Exhibit B:** Still photo of video for the Video Avenue store, Bayamón at 6:29:13 p.m. on March 17, 2005.

**Exhibit C:** Still photo of video for the Video Avenue store, Bayamón at 6:29:22 p.m. on March 17, 2005.

**Exhibit D:** Supplement Incident Report, dated March 31, 2005, prepared by PRPO Cruz Serrano, as to the arrest of Carrera González for robbery after being identified at a line-up. (A public charging document #05-1-266-02734 for the offense which is kept in the central depository within the Puerto Rico Police Department).

**Exhibit E:** List of property seized on March 22, 2005, by PRPO Cruz Serrano regarding two (2) CDs of video recording for March 17, 2005, regarding #05-1-266-02734, provided by Video Avenue store manager.

**Exhibit F:** List of property seized by PRPO Cruz Serrano on March 30, 2005, as to #05-1-266-02734 from Carrera González' house that was provided to local prosecutor for the state court case.

**Exhibit H:** Photocopy of pink original document related to Exhibit F above.

### III.    Testimony of FBI Agent Eric Gonima Gil.

FBI Agent Eric Gonima Gil testified he inherited the present case from FBI Agent Richard Gilbert and upon interviewing him, FBI Gonima Gil began the federal investigation with PRPO Cruz Serrano's interview. Although FBI Agent Gonima Gil has been at the residence of defendant Carrera González on numerous occasions, he has not entered same. At the PR

Police Evidence Room, FBI Agent Gonima Gil retrieved the items seized from defendant's home in the presence of PRPO Cruz Serrano and the Evidence Custodian, including items listed in Exhibit F, a black jacket with Burnside tag, size large, photocopy of MBNA statement for April 2005 of Attorney Porrata Doria and photograph of evidence seized from Carrera González' house. Agent Gonima also interviewed Ms. Gloraima Torres, whose statements was that she sold to defendant Carrera González the electronic equipment at the Video Avenue store, and he presented an identification with Attorney Porrata Doria's name but defendant's photograph on it.

FBI Agent Gonima also interviewed Ms. Gloraima Torres and her husband Alexander Román Rivera, who indicated having received threatening calls from defendant Carrera González.

On re-direct examination the document entitled Chain of Custody regarding evidence retrieved from the Puerto Rico Police Evidence Room was presented and attempted to be introduced as being kept in the regular course of business by the FBI Agent conducting an investigation (**Id 7B; later admitted as Exhibit 7**).

## IV.    Testimonies of  Puerto Rico Police Officers **Daniel Alvarez Santana and Vicente Class Corchado.**

PRPO Daniel Alvarez Santana, the custodian of the Evidence Room at the Puerto Rico Police, testified to authenticate and properly introduced in evidence the document referred above by FBI Agent Gonima. **(Exhibit 7).** Handwritten annotations on the documents were

identified as the signatures of PRPO Cruz Serrano and Vicente Class Corchado, who is the other

Evidence Custodian working with PRPO Alvarez Santana.

PRPO Class Corchado testified solely as to working in the Evidence Room and having

prepared the certified copies for **Exhibit 7** and having witnessed the delivery of evidence on

December 1, 2005 to FBI Agent Gonima Gil.

## V.      Testimony of defendant Carrera González.

Carrera González testified he was arrested on March 30, 2005, when his wife came into

the bedroom of his home and notified him the PRPOs were there.  PRPO Cruz Serrano was the

one who physically placed him under custody.  Thereafter, defendant Carrera González

indicated it was PRPO Cruz Serrano who placed him under custody.  Carrera González also

stated under oath there was no DVD player at his home, no PlayStation2 and they had no

membership to be able to rent movies from a video store for which no movies were seized from

his home.    Additionally, he never saw anyone picking up any kind of cards from the floor.

Carrera González admitted as to the statement of rights submitted (**Exhibit 5**) where he placed

a mark, indicating at no time he waived his rights.  Carrera González testified at no time he

provided a statement on the way out from his home nor at the Puerto Rico Police

Headquarters.  The trash can and the garbage are deposited outside the fence of the house.

Carrera González indicated having signed Exhibit 5, warning of rights at the Police

Headquarters and no waiver of rights was given at his house at the time of arrest.  The signature

that appears in Exhibit 4 under the name of Pedro Carrera is not his and he has never been

called by the nickname "Junito".

## LEGAL DISCUSSION

The evidence defendant Carrera González seeks to suppress has been properly identified

by the law enforcement agents as being in plain view, as well as thereafter having followed the

appropriate chain of custody.   The "plain view doctrine," validates a seizure where "(1) the

seizing police officer lawfully reached the position from which he could see the item in plain

view; (2) the seizure satisfied the probable cause standard; and (3) the seizing officer had a

'lawful right of access to the object itself.' " *See* United States v. Antrim, 389 F.3d 276, 283 (1st

Cir. 2004) (citation omitted), *cert. denied*, 544 U.S. 936 (2005).  *See also*  United States v.

Jones, 187 F.3d 210 (1st Cir. 1999).  From an examination of the testimonies presented at the

hearing, having no rebuttal whatsoever as to the presence of the agents inside the residence of

Mr. Cabrera González and his wife Xiomara Antongiorgi, all elements for a plain view seizure

have been met.

PRPO Cruz Serrano testified he was asked by Ms. Antongiorgi to enter the home where

the investigation of the robbery had conducted them. They were in the open area of the kitchen

when she went to the bedroom to get Carrera González.  From said legally obtained vantage

point the PRPOs were able to observe the empty boxes and the PlayStation2 they already were

aware had been purchased with the victim's stolen credit car at the Video Avenue store in

Bayamón. When they PRPOs asked about the DVD player (also bought with the victim's credit card), Ms. Antongiorgi went to the bedroom to get same and surrendered it to the agents.

Under these facts, law enforcement agents need not seek a warrant where "voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." Illinois v. Rodríguez, 497 U.S. 177, 181, 110 S.Ct. 2793 (1990).  *See* United States v. Meada,  408 F.3d 14, 20 (1ˢᵗ Cir. 2005).

Additionally, defendant Carrera González' testimony was limited to denying the items seized were located at his home at the time of his arrest.  The law enforcement agents' testimonies and the documentary evidence presented, which followed the chain of custody, are considered more believable than defendant's self-serving version of events the items seized were not in his home or he did not see anyone upon leaving the home under arrest, picking the identification cards from the ground.

As such, defendant's grounds seeking suppression seem to rest solely on questions of credibility at the suppression hearing.  However, the assessment of the evidence presented at the suppression hearing before this Magistrate Judge rests also on historical facts, reasonable conclusions from the evidence admitted, in addition to the credibility afforded to law enforcement agents' testimonies and the documentary evidence.

United States of America v. Pedro Carrera González
Criminal No. 05-366 (JAG)
Report and Recommendation
Page 15

After evaluating the testimonies of PRPOs Cruz Serrano, Alvarez Santana and Class Corchado[2], FBI Agent Gonima and that of defendant Carrera González, including their responsiveness and their demeanor on the stand, as well as the documentary evidence presented at the suppression hearing, this Magistrate Judge finds, pursuant to the preponderance of the evidence and considering the totality of the circumstances, the account of the PRPOs to be credible and accords little weight to defendant Carrera González's testimony under these circumstances.[3]

Defense counsel attempted to impeach the Incident Report of PRPO Cruz Serrano because it did not contain the items which were seized (**Exhibit D**). Nonetheless, the seizure of these items appears in a different report, reasonable explanation was provided for not being depicted in the initial report, the chain of evidence was duly established by the Evidence Room custodian, and the proceedings followed, although not the regularly used color coded forms known by defense counsel, reflect no significant inconsistencies. The witnesses' testimony, PRPO Cruz Serrano and FBI Gonima, indicated the local prosecutor's office had lost the file the first time around in state court, for which the color coded forms would not correspond since the

---

[2] Defense counsel made efforts to impeach the credibility of the PRPOs by different means including the use of the transcript of the Rule 6 hearing in state court and the existence or not of different color copies of the reports that were not properly distributed. Even though there may have been some inconsistencies between the testimonies of PRPO Cruz Serrano at the suppression hearing and prior testimony at the Rule 6 hearing, these inconsistencies do not affect the totality of the circumstances at the time, under which the PRPOs relied upon and as to how they found the articles seized from defendant's home and frontyard, more so when defendant Carrera González' testimony was limited to denying that, except for his arrest, none of the events, statement, merchandise or identification cards were or even existed at the location described by the witnesses.

[3] The findings of the court after a hearing on a pretrial motion to suppress are binding unless they are clearly erroneous. United States v. de Jesús-Ríos, 990 F.2d 672, 677 (1st Cir.1993). United States v. Hernández-Rodríguez, 443 F.3d 138 (1st Cir. 2006) (credibility determinations in a report and recommendation should not be rejected by the Court without hearing the evidence examined by the Magistrate Judge).

United States of America v. Pedro Carrera González
Criminal No. 05-366 (JAG)
Report and Recommendation
Page 16

paperwork had to be reconstructed and it was the first time PRPO Cruz Serrano filled out said

form for that kind of offense.

Likewise, arguments related to suppression of any statements by defendant were

circumscribed to the fact that Carrera González denied having provided any statement.  The

statements were not adopted in writing and were limited to one sentence description on the flip

side of Exhibit 6 stating that being taken to the line-up he voluntarily and without intimidation

stated having committed the offense on March 17, 2005.  Carrera González testified at the

suppression hearing having signed the document of warning and admonishment of rights while

at the Police Headquarters.  He denied having signed the document upon arrest while at his

home.  As such, there is no issue of voluntariness or coercion to elucidate and the credibility as

to whether the statements were or not made would rest on the trier of fact.  *See* United States

v. Tibolt, 72 F.3d 965, 972 (1ˢᵗ Cir. 1995)(noting that factual findings and credibility

determinations relating to suppression issues are normally for the trier of fact).

After observing the demeanor of the PRPOs and defendant on the stand, after

considering their testimonies as a whole, this Magistrate Judge gives no credibility to defendant

Carrera González' self-serving statement that the PRPOs did not observe or find anything in the

residence nor in the front yard of his home.  Defendant Carrera González had the opportunity

to present the testimony of his common-law-wife, Ms. Antongiorgi, who was present at the time

of the events and at times present at the suppression hearing and declined to do so.  As such,

except for an absolute denial as to the existence of the seized evidence, defendant Carrera

González has not rebutted the evidence presented by the government at the suppression hearing before this Magistrate Judge which was in plain view as to the electronic equipment and abandoned in an open area near the trash bags of the front yard as to the identification cards.

## CONCLUSION

Based on the witnesses' testimony at the suppression hearing, including the testimonies of the PRPOs and of defendant Carrera González, and having assessed their credibility and taking into account the documentary evidence presented, a preponderance of the evidence and considering the totality of the circumstances, it is recommended that the Motion to Suppress (**Docket No. 42**) be DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

In San Juan, Puerto Rico, this 25th day of October of 2006.

s/CAMILLE L. VELEZ-RIVE
**CAMILLE L. VELEZ-RIVE**
**UNITED STATES MAGISTRATE JUDGE**